UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JULIE V.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations,

                Defendant.

Case No. 2:17-cv-01274-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Julie V. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned affirms defendant's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

On February 26, 2014, plaintiff filed an applications for a period of disability and disability insurance benefits. Dkt. 8, Administrative Record (AR) 14. She filed an application for SSI benefits on December 15, 2014. *Id.* In both applications, she alleged that she became disabled beginning November 1, 2013. These applications were denied by the Social Security Administration on August 7, 2014, and reconsideration was denied on October 29, 2014. *Id.* A hearing was held before an administrative law judge ("ALJ"), at which plaintiff appeared and testified, as did a vocational expert. *Id.*

In a decision dated March 30, 2016, the ALJ found that plaintiff was not disabled. AR 27-28. Plaintiff's request for review was denied by the Appeals Council on June 20, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to this Court on August 29, 2017. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

In her March 2016 decision, the ALJ resolved steps one and two of the five-step sequential analysis in plaintiff's favor. AR 16-17. The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability and that she had the following severe impairments: affective disorder, personality disorder, and substance abuse disorder. AR 17. At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Social Security Administration's regulations. AR 17.

In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that the plaintiff had the residual functional capacity (RFC)

> **to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she has sufficient concentration to understand, remember, and carryout [sic] simple, repetitive tasks; can maintain concentration and pace in 2 hour increments with usual and customary breaks; can work in the same room with a small group of coworkers, up to 10, but should not work in coordination with them; can have only superficial and occasional interaction with the general public[;] superficial means she can refer the public to others to respond to their demands or requests, but she does not resolve those demands or requests herself; this restriction does not apply to working with the public on the telephone; she can interact with supervisors occasionally; can adapt to simple workplace changes, as may be required for simple, repetitive tasks; and can set simple workplace goals as would be required for simple, repetitive tasks.**

AR 19 (emphasis in original). Because of this assessment of the plaintiff's RFC, the ALJ found that the plaintiff was not disabled because there were a number of jobs that exist in significant numbers in the national economy that the plaintiff could perform. AR 27-28.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits. She alleges that the ALJ erred:

(1) in evaluating the medical evidence;

(2) in discounting plaintiff's subjective testimony;

(3) in discounting certain lay witness testimony; and

(4) consequently, in assessing plaintiff's residual functional capacity and finding she can perform jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ did not err in assessing the medical opinion evidence, plaintiff's testimony, or the lay witness testimony, and therefore that she did not err in determining the plaintiff's residual functional capacity and that she is not disabled.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 3

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. **The ALJ's Evaluation of the Medical Opinion Evidence**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons in discrediting the opinions of a treating psychologist and two examining psychologists. Specifically, she asserts that the ALJ did not give sufficient weight to the opinions of Tasha Morris, Ph.D., Margaret Dolan, Ph.D., or David Widlan, Ph.D.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 725. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ needs to explain why "significant probative evidence has been rejected." *Id.* Essentially, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without an explanation that another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

The ALJ must evaluate any medical opinion based on the factors in the SSA regulations, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency; and 5) specialization. *See* 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

Here, the plaintiff contends with respect to all three doctors that the ALJ's reasons for discounting their opinions were not "clear and convincing." In contrast, the Commissioner argues the ALJ's reasons *were* "specific and legitimate."

Because Dr. Morris, Dr. Dolan, and Dr. Widlan's opinions were contradicted by state-agency reviewing doctors, John Gilbert, Ph.D., and Eugene Kester, M.D., the ALJ was required to give only specific and legitimate reasons, supported by substantial evidence, to reject their opinions. AR 89-90, 102-03; *see Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (specific and legitimate standard applied where state agency reviewing physician contradicted examining physician). Although the state-agency reviewing opinions alone cannot constitute substantial evidence for rejecting examining and treating opinions, those opinions "may suffice to establish a conflict among the medical opinions[.]" *Id.* at 1067 & n. 2; *see also Lester*, 81 F.3d at 831 (ALJ may reject examining opinion in favor of reviewing opinion for specific and legitimate reasons supported by substantial evidence).

A.    <u>Treating Psychologist: Tasha Morris, Ph.D.</u>

The plaintiff contends that the ALJ failed to give proper weight to the opinion of Dr. Morris, her treating psychologist. Plaintiff contends that as Dr. Morris is a treating source, her opinion should be afforded greater weight.

Dr. Morris completed a check-the-box form in December 2015. AR 316. She supplemented that form with a two-page declaration in January 2016. AR 413. She based her opinions on her observations during three years as plaintiff's treating psychologist for bipolar disorder and borderline personality disorder. *Id.*

Dr. Morris opined that plaintiff is markedly limited in interacting appropriately with supervisors and coworkers, and that she is extremely limited in responding appropriately to work pressures and to changes in a routine work setting. AR 362. In the 2015 form, Dr. Morris explained that plaintiff's "anxiety and mood symptoms greatly impair her stress tolerance [and] her ability to function in a normal stressful work environment." *Id.* In the 2016 declaration, Dr. Morris listed several factors that contribute to plaintiff's limitations: "daily stressors such as criticism, supervision, direction or oversight . . . have a deleterious effect on her mental health." She also referred to paranoid ideation and "bizarre and irrational thinking" when plaintiff feels threatened, and stated that plaintiff "generally disengages" when she feels threatened. *Id.* Dr. Morris further opined that the plaintiff meets listing 12.06. *Id.* Finally, she opined that the plaintiff has marked limitations in social functioning and concentration, persistence, or pace, and that she cannot "perform[ ] even simple, repetitive tasks with limited interactions with co-workers and supervisors." *Id.*

The ALJ gave Dr. Morris's opinion "minimal weight." She offered two reasons: First, the ALJ noted that the determination of whether a claimant can work is reserved to the Commissioner. AR 25. She referred to her prior discussion, which found that the record as a whole does not support a disability determination and that, contrary to Dr. Morris's opinion, the plaintiff's condition does not meet a mental health listing. AR 17, 23. Second, the ALJ found that Dr. Morris's "own mental status examinations . . . routinely indicated that the claimant had few mental health problems or symptoms." AR 25.

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimants] case record.'" *Revels v.*

*Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If the treating opinion is uncontradicted, an ALJ must provide clear and convincing reasons to reject it. *Id.*

On the other hand, when other evidence contradicts a treating or examining physician's opinion, the ALJ must provide "specific and legitimate reasons" to it. *Revels,* 874 F.3d at 654. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, substantial evidence in the record must support the ALJ's reasons. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

The ALJ correctly noted that determinations of whether a claimant can work are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); SSR 96-5p. The ALJ was nevertheless required to offer reasons for discounting Dr. Morris's opinions about plaintiff's limitations, and, as noted above, those reasons must be specific and legitimate. *See Widmark*, 454 F.3d at 1066-67.

The ALJ's finding that Dr. Morris's treatment notes—specifically the mental status examinations she performed—did not support her opinion was a specific and legitimate reason to discount that opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that contradiction between treating physician's opinion and own treatment notes is specific and legitimate reason to reject opinion); *Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that finding that doctors' opinions were "internally inconsistent, unsupported by their own treatment records or clinical findings, [and] inconsistent with the record as a whole" is specific and legitimate basis to discount them). Substantial evidence supports that reason: Dr. Morris's examinations contained very few indications of mental-health issues, and she consistently found that plaintiff showed, for instance, logical,

coherent, and goal-directed thought processes, that the plaintiff was pleasant, cooperative, and engaged, that she showed good-to-excellent insight and judgment, and that she showed no signs of paranoia. *See* AR 290, 293, 296, 299, 302, 305, 347, 350, 353, 356, 359. Nor do Dr. Morris's treatment notes otherwise contain indications of concern about limitations from mental health. *See generally* AR 289-306, 346-60. The ALJ thus gave reasons to discount Dr. Morris's opinions that were both specific and legitimate and supported by substantial evidence.

B.  Examining Psychologist: Margaret Dolan, Ph.D.

Plaintiff also contends that the ALJ erred in discounting the opinion of Dr. Dolan, an examining psychologist. AR 31.

Dr. Dolan examined the plaintiff in August 2014. AR 321. She conducted a clinical interview and a mental-status examination and reviewed four psychiatric reports from Dr. Morris. *Id.* She diagnosed plaintiff with Bipolar I Disorder, writing "She has experienced one psychotic episode with manic features. She seems to be in a major depression with depressed mood, sleep disorder, fatigue, feelings of worthlessness, diminished ability to concentrate. These symptoms certainly cause significant distress." AR 329. She also noted, "[t]he fact that she had a reportedly stable work history prior to her hospitalization is hopeful. It isn't clear why her depressive symptoms are not stabilized enough to return to work or when she will be able to do so." AR 330.

Dr. Dolan's opinions on plaintiff's functioning were equivocal. She found that understanding and memory "might be a problem on a job. However, they were not in the past." AR 330. She wrote that plaintiff's concentration and persistence "are seriously affected by her illness and seem to have been the most serious deterrent to holding a job," though she added plaintiff "does report being able to concentrate on movies, etc." AR 331. She found that plaintiff's reasoning and social interaction were unimpaired. She indicated that adaptation may

be a problem for the plaintiff but that "a change in medication and return to counseling might be helpful." *Id.*

The ALJ gave Dr. Dolan's opinion "some weight." AR 24. The ALJ determined that Dr. Dolan's opinion about the plaintiff's ability to work was on an issue reserved to the Commissioner. And the ALJ stated that the record as a whole does not support the limitations Dr. Dolan found, pointing to Dr. Dolan's own exam notes and to other evidence including findings in mental status examinations that the plaintiff's concentration, persistence, and pace were unimpaired. The ALJ noted that other exams and treatment notes from around the same time indicated that plaintiff was in a "low period" due to a breakup but that her mental status was mostly normal and she was managing her anxiety. *Id.*; *see* AR 358-59. The ALJ further reasoned that the infrequency of plaintiff's appointments with her treating psychiatrist—every three months—"is not indicative of someone as severely limited" as Dr. Dolan found. AR 24.

The plaintiff contends that, contrary to the ALJ's finding, Dr. Dolan's observations actually supported the limitations Dr. Dolan found. She contends that Dr. Widlan and Dr. Morris's opinions supported those limitations, as well. The plaintiff further contends that the ALJ lacked a basis to find that the treatment plaintiff received was too conservative for the limitations alleged: while she saw Dr. Morris every 2-3 months to adjust her medications, she was attending counseling every week, and Dr. Dolan was aware of this in forming her opinions.

As noted above, Dr. Dolan's opinions were for the most part equivocal. Dr. Dolan did not opine that plaintiff is functionally impaired in any area other than "sustained concentration and persistence." *See* AR 330-31. Thus, the plaintiff has not shown that the ALJ actually failed to incorporate any other functional impairment in her RFC. *See* AR 19.

With respect to concentration and persistence, Dr. Dolan opined that these functions "are seriously affected by [plaintiff's] illness." AR 331. (Dr. Dolan qualified this opinion, too: those functions "seem to have been the most serious deterrent to holding a job," "[h]owever, she does report being able to concentrate on movies, etc." *Id.* (emphasis added).) The ALJ gave a specific and legitimate reason for rejecting this opinion, as neither Dr. Dolan's examination nor other mental status exams noted any limitations to concentration and persistence. *See* AR 326-27; *see also* AR 290, 293, 296, 299, 302, 305, 347, 350, 353, 356, 359 (mental status examinations). A lack of support in a doctor's clinical findings and inconsistency with the record as a whole are specific and legitimate reasons to discount the doctor's opinion. *Houghton*, 493 F. App'x at 845. The plaintiff has not shown that the ALJ's analysis of Dr. Dolan's opinion was erroneous.

C. <u>Examining Psychologist: David Widlan, Ph.D.</u>

Finally, plaintiff contends that the ALJ failed to give proper weight to the opinion of treating psychologist Dr. Widlan.

Dr. Widlan conducted a psychological evaluation of plaintiff in November 2014. AR 334. He performed a clinical interview and a mental status exam, though he did not review any records. *Id.* Dr. Widlan diagnosed the plaintiff with bipolar disorder and "Depression, Severe with psychotic features." He also listed a diagnosis of "Generalized Anxiety Disorder, vs. Panic Disorder," and a rule-out diagnosis of bipolar schizoaffective disorder. AR 335.

Dr. Widlan opined that plaintiff is severely limited in her ability to complete a normal workday or work week and markedly limited in her abilities to adapt, communicate, or perform effectively. The ALJ gave "some" weight to Dr. Widlan's opinion, AR 24, and reasoned that it was "based on incomplete information" because plaintiff did not tell him that she was "attending school" and "receiving fairly good grades" at the time. Plaintiff also did not tell him that "the source of much of her mental stress" around that time was her breakup, as she had told her

therapist. *See* AR 389-90. The ALJ stated that "if the doctor had access to this information, it is likely that his opinion would have been altered." AR 24. Nonetheless, the ALJ stated, she incorporated many of the limitations Dr. Widlan assigned.

The plaintiff contends that the ALJ based her reasoning on her own presumptions and speculation about how Dr. Widlan would have considered the missing information.

A doctor's reliance on incorrect or incomplete information in forming an opinion is a specific and legitimate reason to discount the opinion. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Substantial evidence supports the ALJ's finding that Dr. Widlan was not aware of plaintiff's breakup or her recent attendance at online school. *See* AR 335 (describing the plaintiff's activities of daily living as "engaging in basic activities").

The record also supports the ALJ's inference that this information was significant to assessing plaintiff's condition at the time. In particular, the treatment notes at plaintiff's visit to Dr. Morris in September 2014 focused on her experience during the breakup, as did each of her counseling sessions in September and October 2014. AR 358-60. This was plaintiff's only visit to Dr. Morris between April 2014 and March 2015; and the plaintiff did not visit the counselling office between November and April 2014. *See* AR 289, 355, 382, 389.

The plaintiff further contends that because her breakup happened after her alleged onset date, November 1, 2013, it should not be considered a cause of her disabilities. Yet it does not follow that (as plaintiff asserts) the ALJ would not have substantial evidence upon which to discount Dr. Widlan's opinion due to his ignorance of the breakup. Dr. Widlan examined the plaintiff at one point in time—November 2014—and the ALJ reasonably drew the inference from the record that information about her life at that time would affect Dr. Widlan's assessment

of plaintiff's mental health condition. Plaintiff's argument assumes what it sets out to prove: that she was disabled as of her alleged onset date.

The plaintiff also contends that, because her testimony shows her online classwork was not demanding in terms of causing stress, and that she stopped her coursework at University of Phoenix because she had trouble accepting feedback, Dr. Widlan's lack of information about her coursework did not justify rejecting his opinion. But whether or not the information about plaintiff's schoolwork was relevant to assessing plaintiff's condition is for the ALJ to determine in the first instance. *Morgan*, 169 F.3d at 601. The Court cannot say that the ALJ was unreasonable to infer that Dr. Widlan would likely have had a different assessment of plaintiff's capabilities if he knew that plaintiff could perform 10 to 20 hours of online coursework per week and attain good grades.

II. **The ALJ's Assessment of Plaintiff's Subjective Testimony**

The plaintiff also contends that the ALJ erred in discounting her subjective testimony.

In a function report, the plaintiff stated that she did not get out of bed and preferred not to be around people because of her mental health conditions. AR 242, 246-47. She also stated that she could pay attention for only 20 minutes, had trouble with memory and completing tasks, and experienced paranoia around authority figures. AR 247-48. (She did not report difficulty with concentration, understanding, following instructions, or getting along with others. AR 247.)

At the ALJ hearing, the plaintiff testified that she experienced paranoia at "being judged" at work, AR 49, that she does not like to go into crowds or do much outside of the house, AR 60-61, and that she has short-term memory problems, AR 61.

The plaintiff testified that she attended two online colleges for one quarter each. She said she did not like one school because an administrator called her with feedback after she submitted every paper and "being criticized that much was very difficult for me." AR 55, 63. She stated

that she did not follow through with a second online school. AR 56, 64. She said of both, "I don't know why I stopped going," though she also said of University of Phoenix, "I didn't like . . . how I was being treated." AR 55.

The ALJ discounted the plaintiff's testimony about her symptoms for three main reasons: First, the ALJ found that the objective evidence in the medical record does not support the severity of the limitations plaintiff alleges. Second, the ALJ found that plaintiff's treatment and the fact she stopped attending therapy also does not indicate she is as limited as she alleges. And third, the ALJ found that treatment notes indicated that plaintiff's mental-health condition was stable or "baseline." AR 20-24. The ALJ also observed that plaintiff's activities, including schoolwork and living with friends, as well as her ability to hold jobs for two to three years at a time, undermine her testimony. AR 24; *see* AR 42. And the ALJ found that plaintiff's failure to report substance abuse to her providers "further diminishes the plausibility of her allegations." AR 23; *see* AR 51.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ gave clear and convincing reasons for discounting plaintiff's testimony about the severity of her symptoms.

Determining that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 651 (9th Cir. 2011). A claimant's pain testimony, however, may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

The record supports the ALJ's conclusion that the severe limitations plaintiff alleged were inconsistent with the medical record. Plaintiff was evaluated to be exhibiting a constricted affect on two occasions and a depressed mood and ruminations on one; in her exam with Dr. Dolan she had difficulty in a short-term memory exercise. AR 293, 326, 330, 353. Yet, as discussed above, the numerous mental-status examinations in the record otherwise show few

cognitive difficulties or other indications that her mental-health issues were not controlled. *See* AR 290, 293, 296, 299, 302, 305, 324-28, 347, 350, 353, 356, 359.

The plaintiff asserts that the ALJ downplayed other positive indications of mental-health issues in the record, such as her reports that she was fired from a job for being tardy too often. Dkt. 13, p. 12. But even if a claimant's self-reported reason for being terminated can be relied on to support the claimant's other statements (a circular argument), the record is ambiguous as to whether the firing was related to plaintiff's mental health. *See* AR 292 (noting that plaintiff is "wondering why she struggles so much trouble getting to work on time [sic]," and citing external stressors as a factor). A person can be tardy to work for myriad reasons, most of which do not indicate mental-health limitations. Resolving such ambiguities is primarily the ALJ's responsibility. *Reddick*, 157 F.3d at 722.

The record likewise supports the ALJ's findings that plaintiff was consistently assessed to have stable mental health and that her mental-health providers found her medications were effective. AR 292, 295, 301, 304. These, too, are valid reasons to discount the plaintiff's subjective statements. *See* 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Although plaintiff asserts that she was "either quitting or being fired from jobs because of her symptoms" at the same time Dr. Morris was describing her condition as stable while she was on medications, the ALJ was not required to credit her preferred interpretation of her self-reports to Dr. Morris. Because substantial evidence supports the ALJ's finding, the Court will uphold it.

The ALJ thus gave clear and convincing reasons to discount plaintiff's subjective symptom testimony.

III. **<u>The ALJ's Assessment of Lay Witness Testimony</u>**

The plaintiff also contends that the ALJ erred in rejecting lay-witness testimony about her impairments.

Lay testimony regarding a claimant's symptoms "'is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.'" *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis*, 236 at 512. The ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Plaintiff's mother submitted a third-party function report in May 2014. AR 202-09. She wrote that bipolar disorder causes plaintiff to sleep up to 18 hours a day when she is "low;" that "[h]er highs make her exhausted" and give her "un-realistic expectations of other;" and that at work "she gets frustrated at others expectations of her [and] telling her what to do [and] how to do tasks." AR 202, 209. She provided other information about plaintiff's daily activities and limitations that was largely consistent with the plaintiff's testimony. *See* AR 203-09.

The ALJ gave "minimal weight" to statements made by plaintiff's mother, explaining that they "do little more than reiterate the claimant's allegations." AR 26.

Because the statements of plaintiff's mother were similar to plaintiff's own testimony, the ALJ's valid reasons for discounting plaintiff's statements also provided germane reasons to discount the lay testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was

similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."); *see also Fry v. Berryhill*, 2017 WL 3149890, at *5 (E.D. Cal. July 25, 2017).

## CONCLUSION

Based on the foregoing discussion, the undersigned finds the ALJ did not err in determining that plaintiff was not disabled. Defendant's decision to deny benefits is therefore AFFIRMED.

Dated this 4th day of October, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge